IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Kevin Austin, | ) | Case No. 2:20-cv-1142-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND OPINION** |
| v. | ) | |
| | ) | |
| The Boeing Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge (Dkt. No. 98) recommending that the Court grant Defendant's partial motion for summary judgment (Dkt. No. 69). For the reasons set forth below, the Court adopts the R&R as the Order of the Court and grants Defendant's partial motion for summary judgment.

**I.  Background and Relevant Facts[1]**

Plaintiff is an African American male who began working for Defendant as an assembler in March of 2012.

In pertinent part, in November of 2016, Plaintiff was hired as a Level B aircraft painter. Defendant has two paint departments: the Component Paint Department and the Decorative Paint Department. Plaintiff began working as a painter in the Component Paint Department but later moved to the Decorative Paint Department. Defendant states the Component Paint Department experienced a staff shortage sometime in 2017 and that it implemented a "Component Recovery Plan" whereby Defendant "loaned" painters in its Decorative Paint Department to the Component Paint Department to assist with a backlog of work. Plaintiff claims he began experiencing

---

[1] At the outset, the Court notes that Plaintiff did not object to the R&R's factual recitation of this case. *See* (Dkt. No. 99 at 3).

harassment and discrimination when Eric Infinger became his immediate supervisor in the Decorative Paint Department in August 2017. Plaintiff alleges that Infinger discriminated against him by sending him to work in the Component Paint Department. Plaintiff also alleges that Infinger attempted to lower Plaintiff's performance evaluation from "exceeds expectations" to "met some."

In April of 2018, Mike Holtslander became Plaintiff's new immediate supervisor. But in August 2018, Plaintiff requested a transfer to the Component Paint High Laminate Flow Control ("HLFC") program. Plaintiff began on "C-shift" in this role, working three twelve-hour shifts each weekend. Because of this transfer, however, Infinger again became Plaintiff's immediate supervisor. Plaintiff contends that he was discriminated against when Defendant cancelled a training which Plaintiff needed for HLFC certification—a training allegedly cancelled because Infinger had failed to inform Plaintiff or other African American team members of the prerequisites for the class. Plaintiff alleges that Infinger again attempted to lower his performance rating.

Plaintiff further alleges that, in violation of South Carolina Code § 41-1-80, Defendant changed Plaintiff's shift from "C-Shift" to first shift in response to a workers' compensation claim filed by Plaintiff around May 2019.

On January 14, 2021, the Court granted in part and denied in part Defendant's motion to dismiss. (Dkt. No. 58). The Court dismissed Plaintiff's claims for breach of contract and breach of contract accompanied by a fraudulent act.

On April 19, 2021, Defendant filed a partial motion for summary judgment. Defendant seeks summary judgment on Plaintiff's claims for (1) race discrimination and (2) retaliation under 42 U.S.C. § 1981; and (3) retaliation under S.C. Code Ann. § 41-1-80. Defendant, however, does

not move for summary judgment on Plaintiff's hostile work environment claim. That claim, therefore, proceeds to trial.

On October 25, 2021, the Magistrate Judge filed an R&R recommending that the Court grant Defendant's partial motion for summary judgment. (Dkt. No. 98). Plaintiff filed timely partial objections to the R&R, (Dkt. No. 99), to which Defendant replied, (Dkt. No. 100).

Defendant's motion is fully briefed and ripe for disposition.

## II. Legal Standards

### a. Fed. R. Civ. P. 56 — Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### b. The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which

specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where the plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Because Plaintiff filed objections to the R&R, the R&R is reviewed *de novo*.

### III.  Discussion

After a careful review of the R&R, the relevant record, and Plaintiff's objections, the Court finds that the Magistrate Judge correctly determined that Defendant is entitled to summary judgment on Plaintiff's claims for racial discrimination and retaliation under § 1981, and Plaintiff's state-law workers' compensation claim. The Court discusses each claim in turn.

**Race Discrimination**

First, the Magistrate Judge recommended, under the burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), granting Defendant summary judgment on Plaintiff's § 1981 claim for racial discrimination as to (a) Temporary Assignments to the Component Paint Department and (b) Failure to Promote. (Dkt. No. 98 at 9-20). *See Flowers v. International Longshoreman's Ass'n Local 1422*, No. 2:19-cv-00254-DCN-MGB, 2019 WL 6093255, at *9 (D.S.C. June 4, 2019), *adopted sub nom. Flowers v. International Longshoremen's Ass'n Local 1422*, No. 2:19-cv-00254-DCN, 2019 WL 3927444 (D.S.C. Aug. 20, 2019) (A prima facie case for race discrimination under § 1981 requires that: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed his job in a satisfactory manner; (3) the plaintiff was subjected to an adverse employment action; and (4) the plaintiff was treated differently than

similarly situated individuals outside of his protected class.); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (To establish a failure to promote race discrimination claim, Plaintiff must show that (1) he is a member of a protected group; (2) he applied for the promotion; (3) he was qualified for the promotion; and (4) Defendant failed to promote him under circumstances that give rise to an inference of unlawful discrimination.).  As to assignments to the Component Paint Department, the Magistrate Judge found that Plaintiff could not establish element (3)— that Plaintiff suffered an adverse employment action based on these assignments. Plaintiff objected to this finding. (Dkt. No. 99 at 3-10).  As to Plaintiff's failure to promote claim, the Magistrate Judge found the claim failed because Plaintiff was not qualified for a promotion. Plaintiff did *not* object to that finding. *See* (*id.*); (Dkt. No. 100 at 3).  Thus, the Court examines *de novo* only Plaintiff's race discrimination claim as it concerns temporary assignments to the Component Paint Department.

"[An] adverse employment action is 'an absolute precondition' to an employment discrimination suit." *Batten v. Grand Strand Dermatology, LLC*, C/A No. 4:18-cv-0616-MGL-TER, 2019 WL 9667692, at *6 (D.S.C. Dec. 20, 2019) (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)). Not every personnel decision constitutes an adverse employment action for purposes of a disparate treatment claim. *Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548, 570 (D.S.C. 2013); *see also Thorn v. Sebelius*, 766 F. Supp. 2d 585, 599 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) ("[N]ot everything that makes an employee unhappy is actionable adverse action."). Rather, an adverse employment action is explicitly limited to those actions that affect employment or alter the conditions of the workplace. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006). In other words, an alleged discriminatory act must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." *Holland v.*

*Washington Homes Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation omitted). "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, [and] reduced opportunities for promotion.'" *Cole v. Wake Cty. Bd. of Educ.*, 494 F. Supp. 3d 338, 345 (E.D.N.C. 2020), *aff'd*, 834 F. App'x 820 (4th Cir. 2021), *cert. denied sub nom. Cole v. Wake Cty. BD. of ED.*, No. 20-1373, 2021 WL 2302100 (U.S. June 7, 2021) (quoting *Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999)).

After careful consideration of the R&R, the relevant record, and Plaintiff's objections, the Court finds that the Magistrate Judge ably addressed the issues and correctly found that Plaintiff had not created a question of material fact as to whether being assigned to the Component Paint Department was an adverse employment action. As the Magistrate Judge correctly noted in detail in the R&R, it is undisputed that Plaintiff volunteered for two longer-term assignments in the Component Paint Department as part of the Component Recovery Plan. *See* (Dkt. No. 69-11 at 2) (requesting to work in Component Paint Department under Infinger in March 2018); Plaintiff Objections, (Dkt. No. 99 at 9-10) (admitting as much); (Dkt. No. 95 at 31). It is also undisputed that Plaintiff was not permanently reassigned to the Component Paint Department, *see, e.g.*, *Haggins v. Sam's E., Inc.*, No. 3:13-cv-1596-MBS, 2015 WL 5781390, at *8 (D.S.C. Sept. 30, 2015) ("Temporary changes to assigned tasks or workload are not adverse employment actions."), and that Plaintiff's assignments had no negative impact on his pay, potential for continued employment, or ability to be promoted, *see* (Dkt. No. 69-2 at 74) (testifying Plaintiff received additional overtime pay when temporarily assigned to the Component Paint Department). *Blakney v. N. Carolina A&T State Univ.*, No. 1:17-cv-874, 2019 WL 1284006, at *15 (M.D.N.C. Mar. 20, 2019) (noting that adverse employment actions "must generally impact an employee's pay, potential for continued employment, or likelihood of promotion within the organization"). Further,

the Magistrate Judge correctly observed that workers in both paint departments were required to clean and sand, (Dkt. No. 98 at 18-19) (citing declaration of Robert Jernigan, (Dkt. No. 69-4 at 5) (noting that all painters must clean up areas as they go and that all painters are required to pick up their trash as part of the work process)), and that, even assuming Plaintiff was required to do more cleaning and sanding while working in the Component Paint Department, he would not have experienced a significant change in his job responsibilities, (*Id.* at 19). *See Vedula v. Azar*, No. 8:18-cv-0386-TDC, 2020 WL 5500279, at *9 (D. Md. Sept. 11, 2020) (finding no adverse employment action where "additional" work assignments were "largely memorialized duties and responsibilities that were already required of employees in [plaintiff's] position"). Thus, the Magistrate Judge correctly concluded that the above evidence demonstrated that Plaintiff had "failed to show that his temporary assignments working in the Component Paint Department had a 'significant detrimental effect' on his employment." (Dkt. No. 98 at 20). Plaintiff filed objections to this finding, which the Court addresses below.

Repeating arguments advanced in opposition to Defendant's partial motion for summary judgment, Plaintiff objects that the Magistrate Judge's above findings were erroneous because Infinger's harassment of Plaintiff constituted "humiliation, intimidation, change in responsibilities, *constructive demotion* based on Plaintiff's skills and experience, and loss of confidence in Defendant's evaluation and promotional system." (Dkt. No. 99 at 5) (emphasis added). *Contra* R&R, (Dkt. No. 98 at 2) (observing that Plaintiff alleged Infinger "spoke down to and harassed" Plaintiff, subjected him to derogatory language, and closely monitored his work. The Court also notes that Defendant has not moved for summary judgment on Plaintiff's hostile work environment claim which proceeds to trial).

The Court rejects the above objections on various grounds. First, Plaintiff never raised a constructive demotion argument in his opposition to Defendant's partial motion for summary judgment, thus waiving it. *See generally* (Dkt. No. 73); *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 619 (D.S.C. 2017) ("Parties should . . . fully advance their arguments, at all stages of the litigation, unless they are prepared to waive them.") (citation omitted). Second, even if the argument were timely, Plaintiff applies the wrong standard in his objections. While Plaintiff argues that the assignments to the Component Paint Department did not properly utilize his experience, a constructive demotion claim examines whether an assignment forced an employee to seek a demotion or transfer to another department. *See Cuffee v. Tidewater Cmty. Coll.*, 409 F. Supp. 2d 709, 718–19 (E.D. Va.), *aff'd*, 194 F. App'x 127 (4th Cir. 2006) (requiring a plaintiff to prove his employer "deliberately made [his] working conditions intolerable for the purpose of *forcing* [the employee] *to seek a demotion/transfer to another department*" to establish a constructive discharge claim) (emphasis added).

Next, Plaintiff objects that genuine issues of material fact exist as to whether Plaintiff's reassignment was an adverse employment action because Defendant's policy regarding cleaning responsibilities was "discriminatorily applied, leaving African American employees to complete these tasks rather than their Caucasian comparators." (Dkt. No. 99 at 7); (*Id.* at 9) (admitting that Plaintiff volunteered under Infinger but stating, without citation to the record, that Plaintiff "had to request more hours under Mr. Infinger or risk having a decrease in work and income for a week"). For the reasons already stated above, however, the Court overrules these objections. Namely, Plaintiff's objections fail to show or otherwise explain how working in the Component Paint Department had a "significant detrimental effect" on Plaintiff's employment. *See* (Dkt. No. 98 at 11-20); (*Id.* at 19) ("Though Plaintiff's assigned tasks may have been unfair, they do not rise

to the level of an adverse employment action for purposes of Plaintiff's § 1981 discrimination claim, particularly in light of the fact that Plaintiff was asked to perform them on an occasional basis"); *see Wandji v. Wilkie*, No. 2:18-cv-03036-RMG-MGB, 2020 WL 7647552, at *16 (D.S.C. Nov. 9, 2020), *adopted*, 2020 WL 7237922 (D.S.C. Dec. 9,2020), *aff'd sub nom. Wandji v. McDonough*, 850 F. App'x 851 (4th Cir. 2021) (noting that plaintiff's "temporary re-orientation" did not constitute a material job change because plaintiff continued to perform many of his previous duties, returned to those duties following his re-orientation, and the re-orientation did not result in a change to his job title or overall level of responsibility).

Accordingly, the Court grants Defendant summary judgment on Plaintiff's § 1981 race discrimination claim.

**Retaliation Claim**

The Magistrate Judge recommended, under the *McDonnell Douglas* burden shifting framework, granting Defendant summary judgment on Plaintiff's § 1981 retaliation claim. (Dkt. No. 98 at 23-32). Plaintiff objected to this finding.

Under § 1981, to state a retaliation claim, a plaintiff must first make a *prima facie* showing of retaliation by proving that: (1) he engaged in a protected activity; (2) his employer took a materially adverse action against him; and (3) there was a causal link between the two events. *Perkins v. Intl'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) ("A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements [as a Title VII retaliation claim]."). Under § 1981, "an employee opposes race discrimination when she 'communicates to her employer a belief that the employer has engaged in' such discrimination." *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (quoting *Crawford v. Metro. Gov't of Nashville &*

*Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)). An employee is protected from retaliation for reporting both "employment actions actually unlawful under [§ 1981]" and "employment actions she reasonably believes to be unlawful." *Id.* (quoting *Boyer-Liberto*, 786 F.3d at 282). "In line with other § 1981 claims, to state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, but for her participation in protected activity, she would not have suffered a materially adverse action." *Id.* at 172–73 (citing *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 217–18 (4th Cir. 2016); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020)). The Magistrate Judge found that Plaintiff could not establish either the second or third elements of a § 1981 retaliation claim.

The Court finds that the Magistrate Judge ably addressed the issues and correctly found that Defendant is entitled to summary judgment on Plaintiff's retaliation claim. The Magistrate Judge noted that Plaintiff argued various actions taken against him were materially adverse: (A) Performance Reviews and Verbal Warnings; (B) Cancellation of HLFC Training Class; (C) Temporary Assignments to Component Paint; and (D) Shift Change. The Magistrate Judge correctly explained in detail, however, why each of these actions was not materially adverse to Plaintiff, sometimes noting that Plaintiff had also failed to establish causation. *See, e.g.*, (Dkt. No. 98 at 30-31) (explaining that even if Plaintiff could establish his shift change was materially adverse, he could not establish causation as "he cannot show that the person responsible for his shift change—his accommodation specialist, Robert Frost—knew of his complaints").

Plaintiff objected to this section of the R&R, but in only a limited manner. First, while Plaintiff states that "that the Magistrate Judge erroneously found that Plaintiff did not suffer any injury or actual harms from Defendant's discriminatory acts," (Dkt. No. 100 at 10), Plaintiff does not explain why any specific finding in the R&R to this effect was erroneous. *See* (*id.* at 10-11).

Plaintiff continues that "[s]pecifically, the Magistrate Judge relies on the time lapse between Plaintiff's protected activity and the Defendant's retaliatory acts to negate a causal link between Plaintiff's complaints and the retaliatory actions Plaintiff claims in his Amended Complaint. Plaintiff disagrees." (*Id.* at 10-11); (*Id.* at 11) (arguing that "continued retaliatory animus" was present from Infinger toward Plaintiff, that temporary assignments to the Component Paint Department were "adverse," and that Infinger was responsible for the HLFC training being cancelled).

The Court overrules Plaintiff's objections. As explained *supra*, Plaintiff's objections do not accurately describe how the Magistrate Judge evaluated Plaintiff's claims. While the Magistrate Judge did note that temporal proximity often cut against Plaintiff, *see supra*, the Magistrate Judge also noted that the complained of "Performance Reviews and Verbal Warnings," "Temporary Assignments to Component Paint," and "Shift Change" were not materially adverse actions—findings which, as noted above, Plaintiff does not substantially rebut, or attempt to rebut, in his objections. *See, e.g.*, R&R, (Dkt. No. 98 at 2-3, 26-27) (noting that, while Infinger attempted to decrease Plaintiff's 2017 and 2018 performance evaluation ratings, he failed in doing so because Plaintiff complained of Infinger's actions and Plaintiff did not receive Infinger's suggested rating); (*Id.* at 27-28) (finding that Plaintiff had failed to establish causation as to the HLFC class and further observing that while the class was cancelled, Plaintiff put forth no evidence Infinger knew of any complaints Plaintiff had lodged against him, and that "the record reflects that Mr. Infinger was not notified of the necessary prerequisites for the HLFC training class until January 25, 2019, that he believed the prerequisite Plaintiff lacked was no longer required for the HLFC training, and that Plaintiff completed the prerequisite three days after Mr. Infinger was informed that

Plaintiff needed to complete it in order to participate in HLFC training"—findings which Plaintiff nowhere mentions in his objections).

Accordingly, the Court grants Defendant summary judgment on Plaintiff's retaliation claim.

**South Carolina Workers' Compensation Claim**

Last, the Magistrate Judge recommended granting Defendant summary judgment on Plaintiff's workers' compensation claim in violation of S.C. Code Ann. § 41-1-80.

Pertinent here, in May of 2019 Plaintiff experienced a work-related injury. He filed a workers' compensation claim and was placed on "light duty" due to his restrictions. Plaintiff worked in the "tool room of the Component Paint Shop" during his normal weekend shift until he went on leave to have surgery. Plaintiff claims that he gave a statement about Infinger to one of Defendant's Corporate Investigators, Robert Garcia, on June 6, 2019. Plaintiff went on medical leave on June 20, 2019 and returned on August 30, 2019. Plaintiff claims that he was then notified that "his shift had been changed to first shift, working Mondays to Fridays, in a different building." Plaintiff asserts that he complained about this shift change to Defendant's Human Resources Department on August 31, 2019. He claims that he was referred to a Corporate Investigator, to whom he provided a statement. He further claims that he never received any follow-up communications regarding an investigation into his complaints. Plaintiff was asked to return to his previous position in the tool room in September 2019 and moved back to that position on October 25, 2019. Plaintiff's claim concerns the roughly 8-weeks he worked on first shift. (Dkt. No. 98 at 5).

To prove a workers' compensation retaliation claim, "a plaintiff must establish three elements: 1) institution of workers' compensation proceedings, 2) discharge or demotion, and 3) a

causal connection between the first two elements." *Hinton v. Designer Ensembles, Inc.*, 540 S.E.2d 94, 97 (S.C. 2000).

The Court finds that the Magistrate Judge ably addressed the issues and correctly found that Defendant is entitled to summary judgment on Plaintiff's workers' compensation retaliation claim. As noted in the R&R:

> Here, Plaintiff does not allege that he was officially discharged or demoted, and nothing in the record indicates otherwise. (*See generally* Dkt. No. 73.) Rather, Plaintiff argues that he "work[ed] more days, more hours, for less pay" when he was moved from "C-shift" to first shift, and that this move therefore qualifies as a "functional demotion." (Dkt. No. 73 at 35, citing to Dkt. No. 69- 2 at 137.) However, the record makes clear that Plaintiff's shift was changed as the result of his "light duty" restrictions and Defendant's attempt to accommodate them. (Dkt. No. 94 at 14–26.)

(Dkt. No. 98 at 32) (noting that § 41-1-80 does not apply to employer decisions regarding leave and/or light duty assignments) (citing *Pearson v. Owen Elec. Steel Co. of S.C.* ,No. 3:17- cv-1943-MBS-PJG, 2017 WL 9286996, at *2 (D.S.C. Oct. 6, 2017), *adopted*, 2018 WL 2018 WL 388000 (D.S.C. Jan. 12, 2018) ("Section 41–1–80 . . . prohibits terminating or demoting an employee in retaliation for filing a workers ' compensation claim; it does not address an employer's decisions as to leave or assignment of light duty, or the actual decision to pay or deny the alleged workers' compensation claim.")). While Plaintiff objected to this finding, the Court overrules Plaintiff's objections. At bottom, Plaintiff concedes that § 41-1-80 is inapplicable to this case. (Dkt. No. 99 at 13) (admitting that that "§ 41-1-80 does not cover concerns regarding leave and/or light duty appointments" but nevertheless arguing that the assignment from "C-Shift" to first shift "was a functional demotion which caused a pay disparity that was remedied only after Plaintiff's requests."). Further, even if § 41-1-80 permitted a functional demotion claim, Plaintiff only worked on first shift eight weeks and it appears undisputed that Frost attempted to remedy the pay

discrepancy for Plaintiff. (Dkt. No. 98 at 33) (making this—a finding to which Plaintiff did not object); *see* (Dkt. No. 99). Accordingly, Plaintiff has presented no evidence from which a reasonable jury could find that he was retaliated against as to his workers' compensation claim.

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the R&R, (Dkt. No. 98), as the Order of the Court, and **GRANTS** Defendant's partial motion for summary judgment, (Dkt. No. 69). The Court grants Defendant summary judgment on Plaintiff's race and retaliation claims under § 1981, and Plaintiff's state-law workers' compensation claim. Plaintiff's claim for hostile work environment, however, shall proceed to trial.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

December 14, 2021
Charleston, South Carolina